United States District Court
for Northern District of New York.
        Civil Division

Case No. 1:24-cv-1508 (DNH/DJS)
Jury Trial – No

Arthur Samodovitz, Plaintiff                                      )
            v.                                                                )
Honorables: Shirley Troutman, Madeline Singas,   )
Jenny Rivera, Rowan D. Wilson, Michael J. Garcia,)
Anthony Cannataro, Caitlin J. Halligan, Defendants)

U.S. DISTRICT COURT – N.D. OF N.Y.

FILED

**Dec 11 - 2024**

John M. Domurad, Clerk

## I. Parties to the Complaint

Arthur Samodovitz, Plaintiff
155 Lasa Commons Circle Apt 211
St. Augustine, Fl  32084
904-878-4026
Arthurssails@gmail.com

Honorable Shirley Troutman, Defendant
Honorable Madeline Singas, Defendant
Honorable Jenny Rivera, Defendant
Honorable Rowan D. Wilson, Defendant
Honorable Michael J. Garcia, Defendant
Honorable Anthony Cannataro, Defendant
Honorable Caitlin J. Halligan, Defendant

All Defendants have the same address which is their same place of employment:
        NY Court of Appeals
        20 Eagle St.
        Albany, (Albany County) NY 12207
        (518) 455-7705
Defendants' email addresses and home addresses are not readily available.

## II. Bases for Jurisdiction – Federal Questions

US Constitution:

> Fifth Amendment:  No person shall be … deprived of life, liberty, or property, without **due process of law.**

> Fourteenth Amendment:  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without **due process of law**; nor deny to any person within its jurisdiction the **equal protection of the laws**.

Federal Statute:

> 42 USC 1983:  Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the district of Columbia, subjects, or causes to be subjected, any citizen of the US or other person within the jurisdiction thereof to the **deprivation of any rights,** privileges, or immunities **secured by the Constitution and laws**, shall be liable to the party injured in an action at law, **suit in equity**…."

## III. Amount in Controversy

The underlying decisions in NY Supreme Court case #CA20200184 filed 9/11/2020 and NY Supreme Court case #CA202002179 filed 10/23/2020, granting Motions, filed by United Health Services Hospital (UHSH) and Levine, Gouldin & Thompson (LGT), to Dismiss Plaintiff's Complaints and for Sanctions against Plaintiff, and the affirmance by NY Appellate Division 4th Department in appeal #CA23-00203 filed 8/4/2022 in NY Appellate Division 3rd Department as Case No. 535040 (and later transferred to Appellate Division 4th Department), have irreparably harmed Plaintiff's reputation as an attorney licensed in Connecticut. Also, Plaintiff is entitled to more than $75,000 in damages, attorney's fees, and costs against UHSH and LGT in the NY Supreme Court cases for their violations of Section 487 of NY Judiciary Law, Civil Rico and FDCPA and their filing of frivolous Motions to Dismiss and for Sanctions.  Plaintiff's appeal to the NY Court of Appeals, if heard by Defendants, will eventually result in Plaintiff recovering

these damages against UHSH and LGT.  Nevertheless, the amount of damages is not an issue in the present case for subject matter jurisdiction because it is based on Federal questions.

## IV. Statement of the Claim

1. Defendants are all judges of the NY Court of Appeals, located in Albany, NY.  On 7/28/2023, Appellate Division 4th Department decided Plaintiff's appeal #CA23-00203 (posted on NYCEF on 9/13/2023 with no prior Order of Entry) adverse to Plaintiff, i.e., affirming UHSH's and LGT's Motions to Dismiss and for Sanctions against Plaintiff, but modified/reduced to $20,000 the amount of attorney's fees assessed against Plaintiff by NY Supreme Court. On 10/5/2023, Plaintiff timely filed with the NY Court of Appeals, Plaintiff's Motion #2023-680 for Leave to Appeal the Appellate Division 4th Department's decision in appeal #CA23-00203.

2. The NY Court of Appeals has jurisdiction to hear Plaintiff's appeal based on NY Constitution Article VI Section 3, and Defendants, in their official judicial capacity, had the power to Grant Plaintiff's Motion for Leave to Appeal and hear the appeal, and still have the power to hear the appeal.

3. Plaintiff's Motion for Leave to Appeal involved questions of law and satisfied all other requirements for appeal to the NY Court of Appeal.

4. On 4/23/2024, contrary to the NY Constitution Article VI Section 3, NY CPLR 5601, the US Constitution and 42 USC 1983, Defendants, in their official capacity, incorrectly denied Plaintiff's Motion #2023-680 for Leave to Appeal.

5. On 5/16/2024, Plaintiff timely filed with the NY Court of Appeals Plaintiff's Motion #2024-390 for Re-Argument of Plaintiffs Motion for Leave to Appeal the Appellate Division 4th Department decision in appeal #CA23-00203.

6.  On 7/17/2024, Plaintiff filed a Letter with the NY Court of Appeals under Rule 500.6 advising the NY Court of Appeals of a pertinent, recent decision by the NY Court of Appeals in *Marta Urias, & c. et al.,* v. *Daniel P. Buttafuoco & Associates, PLLC, et al.,* (NY Court of Appeals March 19, 2024) in which the NY Court of Appeals stated that a suit under Section 487 can be filed *after* judgement in the underlying case where the violation occurred, i.e., there is no res judicata.

7.  On 9/19/2024, contrary to the NY Constitution Article VI Section 3, NY CPLR 5601, the US Constitution and 42 USC 1983, Defendants, in their official capacity, incorrectly denied Plaintiff's Motion #2024-390 for Re-Argument.

## History of underlying cases between Plaintiff and UHSH and LGT (attorneys for UHSH in Binghamton City Court)

8.  In 2013, UHSH sued Plaintiff in Binghamton City Court for failing to make a co-pay of $1,542 for surgical goods and services allegedly provided to Plaintiff during a surgery on 3/16/2011.  Plaintiff challenged this bill and two other bills for about $3,300 that Plaintiff mistakenly paid in full for related lab charges on 1/11/2011 and 3/21/2011, as explained in paragraphs 9-14:

9.  UHSH billed Plaintiff for a vein mapping on 1/11/2011 which UHSH knew that it did not provide.

10. UHSH knowingly over-billed Plaintiff for overhead charges for administration of anesthesia on 3/16/2011.  This manner of over-billing for these overhead charges applied to thousands of other surgical patients of UHSH as well.

11. UHSH billed Plaintiff for several drugs that it did not provide to Plaintiff on 3/16/2011.

12. UHSH performed a Duplex Scan Extremity on 1/11/2011 instead of the vein mapping, and the reasonable and customary charge in the Boome County area in 2011 for a Duplex Scan Extremity was far less than what UHSH billed Plaintiff for the vein mapping.

13. UHSH billed Plaintiff for a Duplex Scan Extremity on 3/21/2011 much more than reasonable and customary in the Boome County area. Also, this Duplex Scan Extremity was not medically necessary.

14. The doctor who ordered the vein mapping of 1/11/2011, performed the surgery on 3/16/2011 and ordered the Duplex Scan Extremity on 3/21/2011 was purportedly employed by United Medical Associates unrelated to UHSH, but was actually paid by UHSH and a de-facto employee of UHSH. Plaintiff did not learn this until 2013 during discovery in the Binghamton City Court case.

15. In 2018, UHSH, through LGT attorney Sopinski, filed a Motion for Summary Judgement in the Binghamton City Court case along with and based on an Affidavit of Deborah Reilly, a UHSH employee in its billing department. The Reilly Affidavit falsely stated that all charges billed to Plaintiff were reasonable and customary in the Broome County area and that all goods and services that UHSH billed-for were actually provided to Plaintiff.

16. Both Reilly and LGT knew that the Reilly Affidavit was false and intended to deceive Binghamton City Court into granting the Motion for Summary Judgement.

17. On information and belief, an in-house attorney for UHSH approved the Reilly Affidavit for subsequent filing in Binghamton City Court, knowing that the Reilly Affidavit was false.

18. Plaintiff challenged the Reilly Affidavit in Binghamton City Court as false and based on her lack of first-hand knowledge or other factual knowledge. Plaintiff also provided, as evidence of over-billing by UHSH, much lower

bills from other service providers in 2011 for Duplex Scan Extremity and other goods and services similar to those that UHSH actually provided, and also identified several goods and services that UHSH billed-for but did not provide to Plaintiff.

19. Nevertheless, based on the Reilly Affidavit, Binghamton City Court granted UHSH's Motion for Summary Judgement.

20. After the adverse decision in Binghamton City Court, Plaintiff filed a Notice of Appeal and Appeal Brief with Broome County Court, and a process server handed them both as proper service to Beth Pavelski, an employee receptionist for LGT, at the LGT office in Vestal, NY.  Pavelski was authorized to receive the legal papers for LGT.  Because the process server was not highly experienced, Plaintiff had accompanied him to ensure that his service of the papers to LGT was proper which it was, the process server signed an Affidavit of Service in front of a notary about 15 minutes after the service, and it was promptly mailed to the Binghamton City Court which was the proper court.

21. Binghamton City Court accepted the Notice of Appeal, Appeal Brief and Affidavit of Service as sufficient and proper, and "returned" the appeal to Broome County Court to hear the appeal on its merits.

22. About a month later, LGT Attorney Charnetsky, who took over the Binghamton City Court case from Attorney Sopinski, filed a Motion to Dismiss the Appeal in Broome County Court based on alleged improper service of the Notice of Appeal, despite admitting to Broome County Court that LGT timely received the Notice of Appeal and Appeal Brief.  This Motion included an Affidavit by Pavelski, dated about the time of the Motion, which falsely stated that Plaintiff himself, not the process server, served the papers on her, and that was the basis for Charnetsky's Motion.

23. In her Affidavit, Pavelski also stated that she "did deliver" the papers to LGT Attorney, Sopinski, and this also qualified as proper service because Pavelski was over 21 years old and not a party.

24. In response to the Motion to Dismiss, the process server made a Supplemental Affidavit and Plaintiff made an Affidavit, both attesting that the *process server* handed the Notice of Appeal and Appeal Brief to Pavelski, and Plaintiff filed these two Affidavits along with the process server's original Affidavit of Service with the Broome County Court.

25. Plaintiff also argued to Broome County Court that delivery of the Notice of Appeal by Pavelski to Attorney Sopinski as stated in her Affidavit, was proper service regardless of who served Pavelski, LGT admitted to timely receiving the Notice of Appeal, and LGT challenged the service in the wrong court.

26. At a subsequent traverse hearing ordered by Broome County Court, Pavelski falsely testified that Plaintiff, not the process server, handed the legal papers to her, and she did **not** deliver the legal papers to Attorney Sopinski, contrary to her Affidavit, but instead put them in a box for a "girl" of unspecified age to deliver to Attorney Sopinski.  Neither Plaintiff nor the process server attended the traverse hearing because the process server was a neighbor of Plaintiff and not highly experienced, and Plaintiff did not think it fair to put him through a trial.  Also, under the law of the 3rd Department, notably *Neroni vs. Folender* 37 AD3d 1336 (Third Department), a party can legally serve papers of this type provided there is no prejudice, where there was not.  Also, Pavelski admitted in her Affidavit that she served the papers on Sopinski, so this was legal service as well.  Also, procedurally, UHSH need to challenge the service in Binghamton City Court which received, reviewed and accepted the original Affidavit of Service before "returning" the appeal to Broome County Court.  For all these reasons, Broome County Court should have denied the Motion to Dismiss regardless of the outcome of the traverse hearing.

27. Based on the Pavelski testimony, Binghamton City Court found improper service, and Broome County Court dismissed the appeal for improper service based solely on the finding of Binghamton City Court that Plaintiff

served the Notice of Appeal, without any comment on Plaintiff's legal arguments.

28. The campaigns of the Binghamton City Court judge and her husband, who was a Broome County Court judge, had accepted monetary contributions from LGT.

29. The Broome County Court judge was a personal friend of several of the partners of LGT, and the campaign of the Broome County Court judge had accepted at least $850 from them.

30. In Complaint #CA20200184 filed 9/11/2020 in NY Supreme Court, Plaintiff sued UHSH for widespread, improper billing and signing the false Reilly Affidavit with intent that it be filed with Binghamton City Court. In Complaint #CA202000184, Plaintiff also sued LGT for filing the Reilly Affidavit knowing it was false. In Complaint #CA202002179 filed 10/23/2020, Plaintiff sued LGT for signing and filing the false Pavelski Affidavit knowing that it was false, and for LGT employee, Pavelski, testifying falsely at the traverse hearing (which occurred after the filing of Complaint #CA20200184).

31. Under NY UCT 1808, there was no collateral estoppel in the NY Supreme Court cases from findings and decisions made in Binghamton City Court (because of relaxed rules of evidence and procedure in City Court).

32. The NY Supreme Court Complaints #CA202000184 and #CA202002179 included detailed, factual allegations supported by documented evidence of the foregoing improper billings by UHSH, and also that the Reilly and Pavelski Affidavits were knowingly false and the Pavelski testimony was knowingly false. These NY Supreme Court Complaints also specifically alleged that these false Affidavits and false testimony deceived Binghamton City Court into granting UHSH's Motion for Summary Judgment and deceived Broome County Court into granting UHSH's Motion to Dismiss the Appeal. The allegations and documented evidence matched the elements of and were sufficient to support causes of action based on Section 487,

Civil RICO and the Fair Debt Collection Practices Act ("FDCPA"), although they did not mention them *by name*. Under the law, the Complaints were only required to state relevant facts, not conclusions of law or name the causes of action. The Complaints mentioned fraud and negligence by name.

33. In Plaintiff's Affidavits filed in the NY Supreme Court cases and dated 11/20/2020 and 11/21/2020, Plaintiff specifically cited a cause of action under FDCPA against LGT in #CA202002179, and also alleged widespread, improper billing by UHSH in #CA202000184. Plaintiff, not being licensed or experienced in NY law, was not aware of Section 487 *by name* at the time of filing the Complaints in NY Supreme Court, but knew that filing false Affidavits was actionable in civil court.

34. LGT and UHSH and its Attorney Clark at Barclay, Damon in NY Supreme Court were well aware of Section 487 at the time of filing their Motions to Dismiss and for Sanctions in NY Supreme Court, and that LGT violated it with the Reilly Affidavit and Pavelski Affidavit in Binghamton City Court.

35. Even though the Complaints and Affidavits in NY Supreme Court did not mention Civil RICO by name, this cause of action was clear based on the allegations in the Complaint and associated Affidavits of Plaintiff of widespread, improper billing by UHSH, and known to UHSH and its Attorney Clark by name because Attorney Clark had filed two Civil RICO cases in NY in the prior few years, i.e., *Belair Care Ctr. v. Cool Insuring Agency,* 58 NYS3d 873 (Sup. Ct. 2017), and its appeal, *Belair Care Ctr. v. Cool Insuring Agency,* 168 AD3d 1162 (3rd Dept 2019); and *Krog Corp. v. Vanner Grp,* 46 NYS3d 475 (Sup. Ct. 2016). On information and belief, UHSH in Binghamton, NY hired Attorney Clark 140 miles away in Albany, NY because of her experience with Civil RICO.

36. UHSH and LGT filed Motions to Dismiss and for Sanctions against Plaintiff in NY Supreme Court stating that Plaintiff had no plausible cause of action against them. They also stated that there was no common law fraud or common law negligence due to the signing and filing of the false Reilly and Pavelski Affidavits and the false testimony of Pavelski, because *Plaintiff* did

not rely on these Affidavits or testimony.  LGT did not mention Section 487 or the FDCPA, and UHSH did not mention Section 487 or Civil RICO in their Motions to Dismiss or for Sanctions despite their knowledge of them.

37. LGT had the burden in its Motions to Dismiss and for Sanctions to prove that no cause of action existed against them, but did not provide any evidence to refute causes of action based on Section 487 or FDCPA.

38. UHSH had the burden in its Motion to Dismiss and for Sanctions to prove that no causes of action existed against them, but did not provide any evidence to refute causes of action based on Section 487 or Civil RICO.

39. Under the law, it was frivolous conduct for UHSH and LGT to have filed their Motions to Dismiss and for Sanctions because they were aware of Section 487, Civil RICO and FDCPA and knew that the Complaints in NY Supreme Court and Plaintiff's Affidavits sufficiently alleged violations of them.

40. After filing the Complaints in NY Supreme Court, but prior to the Supreme Court decision on 4/29/2021, Plaintiff identified the name, i.e., Section 487, of the cause of action for the filing of the false Reilly and Pavelski Affidavits with NY Supreme Court.  Plaintiff requested permission with NY Supreme Court to file a Supplemental Brief, but NY Supreme Court denied this request.

41. In its Decision of 4/29/2021, NY Supreme Court found that there were no causes of action based on common law fraud or common law negligence because *Plaintiff* did not rely on the false Affidavits of Reilly or Pavelski or false testimony of Pavelski.

42. In its Decision of 4/29/2021, NY Supreme Court did not mention Section 487 or FDCPA *by name* but said that any causes of action based on the Reilly and Pavelski Affidavits were barred by res judicata:

> "[Plaintiff] could have challenged the alleged fraudulent or negligent
> statements in and submission of both Ms. Reilly's affidavit and Ms.
> Pavelski's affidavit in the prior proceeding [City Court] as outlined
> above [i.e., by obtaining an Affidavit from another person who knew
> first-hand what other service providers charged for the same **30** goods
> and services, **7** years earlier] but failed to do so, his claims based on
> the court action are barred by res judicata."

43. NY Supreme Court was aware of Section 487 when rendering its decision
    of 4/29/2021, but did not mention it by name to hide it from Plaintiff and
    attempt to avoid public scrutiny and incorrect stare decisis on this issue.

44. NY Supreme Court was aware of FDCPA when rendering its decision of
    4/29/2021 and did not mention it by name to attempt to avoid public scrutiny
    and incorrect stare decisis on this issue.

45. NY Supreme Court also found that Plaintiff committed frivolous conduct
    based on deficiencies of the common law fraud and common law negligence
    causes of action:

> "[Plaintiff's] attempted fraud or negligence claims based on affidavits
> submitted by the opposing party's counsel – including affidavits from
> an employee of their client and their receptionist – in an underlying
> action can fairly be characterized as frivolous and unsupported by law.

46. In Plaintiff's subsequent Affidavit and Brief of 6/7/2021 requested by and
    filed in NY Supreme Court opposing the amount of attorney's fees requested
    by UHSH and LGT in their Affidavits, Plaintiff objected to the amount of
    attorney's fees requested by UHSH and LGT and also mapped the factual
    allegations in the Complaint *in detail* to the elements of Section 487 *by
    name.*

47. A few months later, Plaintiff found the name of the civil violation for the
    widespread, internationally-improper billing as alleged in the Complaints
    and Affidavits filed in NY Supreme Court. i.e., "Civil RICO", and without

11

court permission, filed a supplemental brief on 12/24/2021 that mapped the
factual allegations in the Complaint *in detail* to the elements of Civil RICO
*by name*.

48. Later, on 2/1/2022, NY Supreme Court issued its decision awarding the full
amounts of attorney's fees requested to UHSH and LGT.  UHSH redacted
from its billing records furnished to the NY Supreme Court the description
of its services provided to UHSH.  On information and belief this was to
conceal UHSH's attorney's review of Section 487 and Civil RICO and their
relevance to the Complaints.  LGT did not submit any billing records to NY
Supreme Court.  On information and belief this was to conceal LGT's
review of Section 487 to conceal its relevance to the Complaints.  LGT
defended itself in NY Supreme Court.

49. In its decision of 2/1/2022, NY Supreme Court simply stated that it had
previously "considered" Section 487 [when rendering the prior Decision of
4/29/2021] without further explanation.  On information and belief, the NY
Supreme Court rejected the Section 487 and FDCPA causes of action based
on its statement in the prior Decision of 4/29/2021 that any claims based on
the allegedly false Affidavits were barred by res judicata. The NY Supreme
Court refused to consider the Civil RICO cause of action.

50. Because the NY Supreme Court "considered" the Section 487 cause of
action, and Plaintiff specifically cited the FDCPA cause of action to NY
Supreme Court, they were both appealable to Appellate Division as a matter
of right.

51. The causes of action in NY Supreme Court against LGT based on Section
487 and FDCPA were not barred based on res judicata or any other law.

52. The causes of action in NY Supreme Court against LGT based on Section
487 and FDCPA were justified and valid under the law and adequately
supported by the Complaint and Affidavits filed in NY Supreme Court.

53. The causes of action in NY Supreme Court against UHSH based on Section 487 and Civil RICO were not barred by res judicata or any other law.

54. The causes of action in NY Supreme Court against UHSH based on Section 487 and Civil RICO were justified and valid under the law and adequately supported by the Complaint and Affidavits filed in NY Supreme Court.

55. The NY Supreme Court knew there were causes of action against LGT at least under Section 487 and the FDCPA and against UHSH at least under Section 487, and Plaintiff sufficiently alleged them. NY Supreme Court knew that it should not have granted the Motions to Dismiss and for Sanctions under the law, and therefor, intentionally denied justice to Plaintiff.

56. Plaintiff then Appealed the NY Supreme Court's final decision of 2/1/2022 to Appellate Division 3rd Department (serving Broome County), and the grants of the Motions to Dismiss and for Sanctions decided on 4/29/2021. Plaintiff provided in his Appeal Brief the detailed mappings of the factual allegations in the Complaints and Affidavits to the elements of Section 487, Civil RICO, and FDCPA and the evidence in the Record supporting these allegations.

57. These mappings and associated law provided in Plaintiff's Appeal Brief were sufficient to overcome UHSH's and LGT's Motions, filed in NY Supreme Court, to Dismiss and for Sanctions.

58. Theses mappings and associated law provided in Plaintiff's Appeal Brief were also sufficient for the Appellate Division to find frivolous conduct by UHSH and LGT in filing their Motions to Dismiss and for Sanctions.

59. In their Answers to Plaintiff's Appeal Brief, neither UHSH nor LGT challenged the sufficiency of the Complaints and Affidavits for alleging violations of Section 487, Civil Rico or FDCPA. Instead, UHSH and LGT merely and incorrectly argued that Plaintiff could not challenge the *grants* of the Motions to Dismiss and for Sanctions because Plaintiff appealed the NY

Supreme Court Decision of 2/1/2022 which actually awarded attorney's fees, but did not directly appeal the prior NY Supreme Court Decision of 4/29/2022 which *granted* the Motions to Dismiss and for Sanctions. UHSH and LGT incorrectly argued that Plaintiff could only challenge the amount of the attorney's fees that were awarded.

60. Plaintiff replied that the NY Supreme Court Decision of 4/29/2022 was a **non**-Final decision because the amount of the attorney's fees was not yet determined, and Plaintiff's appeal of the NY Supreme Court Decision of 2/1/2022, which was Final, allowed appeal of the prior, related *grants* of the Motions to Dismiss and for Sanctions, pursuant to CPLR 5501 and *Burke v Crosson,* 85 NY2d 10 (NY Court of Appeals 1995).

61. The Appeal was transferred from Appellate Division 3rd Department to Appellate Division 4th Department for unspecified reasons and assigned #CA23-00203.

62. On 7/28/2023, Appellate Division 4th Department in appeal #CA23-00203 issued a one phrase, conclusory decision on the merits **without any explanation as to the merits:**

> "Although **we reject Plaintiff's contention that the court abused its discretion in finding the action frivolous,** we agree with Plaintiff that the court erred in awarding costs and fees pursuant to 22 NYR 130.1-1 rather than CPLR 8303-a."

63. Appellate Division 4th Department misquoted Plaintiff above; Plaintiff did **not** say that the *finding* of frivolous conduct was subject to abuse-of-discretion review.

64. This decision by Appellate Division 4th Department also implied Affirmances of the prior grants by the NY Supreme Court of LGT's and UHSH's Motions to Dismiss and for Sanctions. The decision of Appellate Division 4th Department affirming the grants of the Motions to Dismiss and for Sanctions was contrary to law.

65. Appellate Division 4th Department should have applied, but did not apply, the "weight of the evidence" test to the NY Supreme Court's dismissal of the Complaints and finding of frivolous conduct by Plaintiff. Plaintiff cited *Fields v. Fields,* 15 NY3d 158 (Court of Appeals 2010), *Northern Westchester Professional Park v. Town of Bedford,* 60 NY2d 492, 499 (Court of Appeals 1983), *Di Lorenzo v. Windermer Owners,* 174 AD3d102 (1st Dept 2019), *Petti v. Town of Lexington,* 163 AD3d 1370 (3rd Dept 2018), *Hollandale Apts. & Health club v. Bonesteel,* 173 AD3d 55 (3rd Dept 2019), *Michael P. V. Dombrowski*, 211 AD3d 1469 (4th Dept 2022), *Jack v. Geihs*, 245 AD2d 1044 (4th Dept 1997), and *Penn Iron v. Gross*, 192AD2d1059 (4th Dept 1993), to the NY Court of Appeals.

66. Appellate Division 4th Department should have but did not *explain* its reasons for affirming the NY Supreme Court's grants of the Motions to Dismiss and for Sanctions. Plaintiff cited *Goldberg v. Kelley,* 397 US 254, 271 (1970) and *Shakhes v. Berlin*, 689 F3d 244, 256 (2nd Cir 2012) to the NY Court of Appeals.

67. Appellate Division 4th Department should have reversed the grants of the Motions to Dismiss and for Sanctions against Plaintiff, and should have awarded attorney's fees to Plaintiff against UHSH and LGT for filing their frivolous Motions to Dismiss and for Sanctions in NY Supreme Court.

68. Appellate Division 4th Department knew there were causes of action under Section 487 and the FDCPA against LGT, and under Section 487 and Civil RICO against UHSH because it was obvious based on the mappings of the allegations in the Complaint and Affidavits to these causes of action by name. Therefore, Appellate Division 4th Department intentionally denied justice to Plaintiff.

69. The Appellate Division 4th Department did **not** reject Plaintiff's assertion of the Civil RICO cause of action as being untimely raised. Therefore, the Civil RICO cause of action against UHSH is properly before the NY Court of Appeals, along with the Section 487 and FDCPA causes of action.

<u>Plaintiff's **right** to appeal, to the NY Court of Appeals,
the decision of NY Appellate Division 4th Department</u>

70. Plaintiff had a *right* to appeal the decision of Appellate Division 4th Department to the NY Court of Appeals based on NY CPLR 5601(b) and the NY Constitution Article VI Section 3(b) because the NY Supreme Court decision and NY Appellate Division 4th Department decision directly involved construction (and violation) of the NY Constitution and US Constitution, as explained below in paragraphs 71-79.

> NY Constitution, Article VI Section 3:
>> **"(b)** Constitutional grounds. An appeal may be taken to the court of appeals **as of right**: **1.** from an order of the appellate division which finally determines an action *where there is directly involved the construction of the constitution of the state or of the United States.*"

> NY CPLR 5601:
>> "(b) Constitutional grounds. An appeal may be taken to the court of appeals **as of right**: 1. from an order of the appellate division which finally determines an action *where there is directly involved the construction of the constitution of the state or of the United States.*"

71. The NY Supreme Court decision that the Section 487 cause of action was barred by res judicata denied Plaintiff equal protection and procedural due process of the law under the NY and US Constitutions because there is no res judicata under Section 487 for suits filed after the underlying action where the violation occurred, based on the clear wording in the statute, the recent NY Court of Appeals decision, *Marta Urias,* and *Melcher v Greenberg*, 2014 N.Y. Slip Op. 2213, 23 N.Y.3d 10, 11 N.E.3d 174 (NY Court of Appeals 2014) which confirmed a 6-year statute of limitations for Section 487 claims.  Plaintiff cited *Melcher v. Greenberg* to Appellate Division 4th Department, and cited both cases to the NY Court of Appeals.

The Appellate Division 4th Department did not reverse this blatant error of law by the NY Supreme Court and therefore, also denied Plaintiff equal protection and due process of the law.

72. The NY Supreme Court decision that the FDCPA (15 USC 1692e) cause of action was barred by res judicata denied Plaintiff equal protection and procedural due process of the law under the NY and US Constitutions because there is no res judicata under FDCPA for suits filed after the underlying action, based on the wording of the statute and *Robert Carroll v. US Equities.* (DC NY 9/24/2019) 1:18-CV-667 which Plaintiff cited to the Appellate division 4th Department and the NY Court of Appeals. The Appellate Division 4th Department did not reverse this blatant error of law by the NY Supreme Court, and therefore, also denied Plaintiff equal protection and due process of law.

73. The Appellate Division 4th Department decision on the merits incorrectly relied on an "abuse of discretion" standard for the factual finding of frivolous conduct by Plaintiff and indirectly to the grant of the Motions to Dismiss. This incorrect standard denied Plaintiff equal protection and procedural due process of the law under the NY and US Constitutions because the proper standard of review under the law was "weight of the evidence" which is an objective and higher standard to meet for the Motions to Dismiss and for Sanctions. Plaintiff cited *Fields v. Fields,* 15 NY3d 158 (Court of Appeals 2010), and *Northern Westchester Professional Park v. Town of Bedford,* 60 NY2d 492, 499 (Court of Appeals 1983) to the NY Court of Appeals to support Plaintiff's position. This was a blatant error of law by the Appellate Division 4th Department.

74. The Appellate Division 4th Department provided *no explanation* for its decision of frivolous conduct by Plaintiff and indirect decision of insufficient bases for the Section 487, FDCPA and Civil RICO causes of action. This denied Plaintiff procedural due process of law under the NY and US Constitutions because the Appellate Division 4th Department was a fact finder under the law. Plaintiff cited *Goldberg v. Kelley* and *Shakhes v. Berlin*, 689 F3d 244, 256 (2nd Cir 2012) to the Court of Appeals.

75. The Appellate Division 4th Department failed to even consider the Section 487, FDCPA and Civil RICO causes of action despite their being raised in the Appeal Brief and the legal right of the Appellant/Plaintiff to choose these causes of action to be reviewed on appeal to the Appellate Division. The Appellate Division 4th Department did not even mention these causes of action, and instead referenced the common law fraud and negligence causes of action that were not the bases for the appeal. This denied Plaintiff equal protection and due process of the law under the NY and US Constitutions.

76. Defendants agreed to hear and heard another, co-pending case on the same issue of res judicata for filing suit under Section 487, i.e., *Marta Urias.* Plaintiff's case raised the same issue and was better than *Marta Urias* for the NY Court of Appeals to clearly resolve this issue because the motion to dismiss the Section 487 cause of action in *Marta Urias* was nevertheless granted on other grounds, i.e., no allegation of deception of *fact* there so the absence of res judicata was not necessary for the holding there. In contrast, Plaintiff clearly alleged deception of facts so the Motion to Dismiss would be reversed for Plaintiff, and the decision of no res judicata would be necessary for this holding in the present case. Therefore, Defendants denied Plaintiff equal protection of the law under the NY and US Constitutions in denying Plaintiff's Motion for Leave to Appeal.

77. The Court of Appeals has authority to hear appeals other than those enumerated in Article VI Section 3 and CPLR 5601, and in fact, hears other appeals, such as those meeting one or more of the criteria of the NY Court of Appeals Rule 500.22 Motions for Permission to Appeal in Civil Cases (b):

> "(4) A concise statement of the questions presented for review and why the questions presented merit review by this Court, such as that **the issues are** novel or **of public importance, present a conflict with prior decisions of this Court,** or involve a conflict among the departments of the Appellate Division."

Plaintiff's appeal (a) involved issues of public importance (i.e., widespread, improper billing by UHSH that likely applied to thousands of UHSH's surgical patients requiring anesthesia), and (b) presented a conflict with prior decisions of this Court, including *Melcher v Greenberg* and *Marta Urias*. Upon information and belief, Defendants have previously granted Motions for Leave to Appeal to other moving parties whose appeal involved only one of the criteria of Rule 500.22 (4).  Because Plaintiff's appeal involved at least two of the criteria of rule 500.22(4), Defendants denied Plaintiff equal protection of the law under the NY and US Constitutions in not granting Plaintiff's Motion for Leave to Appeal.

78. The NY Constitution Article VI Section 5 requires "judgement … according to law", and the mission statement of the NY Unified Court System (which was created by amendment to the NY Constitution) is to provide a "just resolution":

> NY Constitution Article VI Section 5: "a. Upon an appeal from a judgment or an order, any appellate court … **shall thereupon render** judgment of affirmance, **judgment of reversal** and final judgment upon the right of any or all of the parties, or judgment of modification thereon **according to law**."

> NY Unified Court System: "The mission of the Unified Court System is to promote the rule of law and to serve the public by providing **just** and timely **resolution of all matters before the courts**."

Because **neither** the NY Supreme Court nor Appellate Division 4th Department provided Plaintiff a *just* review or even a meaningful review, according to law as explained above, this denied Plaintiff substantive and procedural due process of the law under the NY and US Constitutions.  It also denied Plaintiff equal protection of the law because NY Supreme Courts and Appellate Division courts have provided just reviews according to law to thousands of other parties.  The NY Court of Appeals is Plaintiff's only recourse at this point in the NY Unified Court System for a just review according to law, so Defendants are

required under NY Constitution Article VI Section 5. and the mission statement of the NY Unified Court system to hear the Appeal.

79. Plaintiff has still another basis for right to Appeal.  The Appellate Division 4th Department *modified* the judgement of the Supreme Court, and the NY Constitution provides a *right* of appeal under Article VI Section 3 where appellate division *modifies* a judgement of the Appellate Division:

> "Article VI Section 3. 1. **As of right, from a judgment or order entered upon the decision of an appellate division of the supreme court which finally determines an action or special proceeding** wherein is directly involved the construction of the constitution of the state or of the United States, or where one or more of the justices of the appellate division dissents from the decision of the court, or **where the judgment or order is one of** reversal or **modification."**

Despite Article VI Section 3, 8. of the NY Constitution, NY CPLR 5601 did not abolish this *right* to appeal under Article VI Section 3 1:

> "NY Constitution Article VI Section 3, 8. The legislature *may* abolish an appeal to the court of appeals as of right in any or all of the cases or classes of cases specified in paragraph (1) of this subdivision wherein no question involving the construction of the constitution of the state or of the United States is directly involved, provided, however, that appeals in any such case or class of cases shall thereupon be governed by paragraph (6) of this subdivision."  Article VI Section 3

NY CPLR 5601 merely states:
> "NY CPLR 5601. Appeals to the court of appeals as of right
> (b) Constitutional grounds. An appeal may be taken to the court of appeals as of right:" CPLR 5601."

Even though CPLR 5601 does not list the right to appeal from judgements and orders that were *modified* by the Appellate Division, CPLR 5601 did not

abolish this right to appeal under NY Constitution Article VI Section 3, 8. because CPLR 5601 does **not** state that its list of rights to appeal are the *only* rights to appeal.  Therefore, Defendants denied Plaintiff equal protection and due process under the laws under the NY and US Constitutions.

80. No declaratory relief is available in NY courts or agencies to challenge Defendants' denial of Plaintiff's Motion for Leave to Appeal or Plaintiff's Motion for Re-Argument.

81. Plaintiff does not have a *right* of appeal to the US Supreme Court for the incorrect decision of Appellate Division 4th Department.

82. Upon information and belief, Defendants were aware of the multiple, foregoing rights of Plaintiff to appeal to the NY Court of Appeals, because Defendants are highly trained and experienced in the NY and US Constitutions, CPLR 5601 and other law on this subject, Plaintiff's rights to appeal are based on the NY and US Constitutions, CPLR 5601 and other law on this subject known to Defendants, and Plaintiff sufficiently raised these rights to appeal and supporting law in Plaintiff's Motion for Leave and Motion for Re-Argument.

## V.  Relief Sought

1.  Injunction ordering Defendants to hear Plaintiff's Appeal of the decision of Appellate Division 4th Department in appeal #CA23-00203, and fairly decide this Appeal based on applicable NY and Federal statutes, applicable case law, the NY Constitution and the US Constitution.

Truly, *Arthur Samodovitz*

Arthur Samodovitz, Plaintiff, pro se.
155 Lasa Commons Circle Apt 211
St. Augustine, Fl 32084
Arthurssails@gmail.com         904-878-4026